Good morning, Your Honors, and may it please the Court, my name is Margaret Fearon. I'm from the Federal Public Defender's Office. I'm appearing today on behalf of the defendant and appellant, Arlan Harrell. I'd like to reserve two minutes for rebuttal, please, and I will be sure to watch my time. There is no question here that Mr. Harrell committed extremely serious crimes, and there's also no question that he will serve a very long prison sentence. Neither of those points are in dispute. The question before the Court today is whether the proceedings that resulted in Mr. Harrell's sentence of life imprisonment without parole comported with due process, and they did not, for two reasons. First, a victim, during her impact statement, used that victim allocution statement to effectively give, for the first time, what amounted to expert testimony on the critical factual dispute before the Court that bore on sort of not necessarily whether Mr. Harrell would receive a sentence of 30 years or life, but whether he would receive any sentence less than life, and that was whether at any point in the future he could ever be prevented from recidivating or he could ever be deemed not a danger. This is a tricky question because obviously the victims or relatives of the victims are entitled to speak, and I've never seen a case like this where the victim gives either quasi-expert testimony or were qualified as an expert testimony. But the rule you're after is to say that we've got to tell the victim, I'll say victim even though we're talking relative of victim, there are certain things you can't say even though you feel you know them and you want to say them. So your solution would be as soon as you start talking about what the evidence says with respect to recidivism, the judge is supposed to say you can't say that? Your Honor, that's actually not the rule that I'm advocating for. I think there are a number of ways to address this question, and I think we can kind of look at the states and the way that they've addressed this question. There's a whole variety of methods that courts and jurisdictions use. So one method is what Your Honor said, that you can talk about the harm you've experienced, no one's questioning that, but you can't give opinions. That's sort of the Booth versus Payne versus Bossie distinction between harm focus versus opinions about the defendant in the sentence. That's one way, but that doesn't have to be the only way. There could also be, and many states say that if, in fact, new factual information is introduced, the court should kind of adjourn the proceedings and allow the defendant to respond. Not that the victim necessarily couldn't do this, but that Mr. Harrell then should have had some forum and some opportunity to respond, to revise. Is there any indication the judge here construed this expert testimony? I mean, there doesn't seem to be any. It seems like these are horrific, horrific crimes. You have the parents of these young kids who were raped, sodomized, abused, and obviously they're very emotional, and the judge was letting them vent a little bit. And in response, he just says, you know, love your kids, I wish you the best. I mean, I don't think there's any indication here. This is a very experienced judge who was a former U.S. attorney. I don't see any evidence that the judge construed this as some expert testimony and took that into account at all. Your Honor, I actually think there are quite a number of indications, and I think that we look to this court's decisions in Quarrel, McKittrick, and McGowan. It is a question of the totality of the record. It's not a magic word search for did the court reference it or not. And I think if we look at the record, there are a number of indications. First, the nature of the dispute. This was the key factual question before the court. Can he ever be rendered safe, even at 80 or 90 years old? The district court made statements. If I may interrupt. Again, this is a very experienced judge. A judge in a victim impact statement won't suddenly say, gee, I think because she took some coursework in psychology, I'm going to accept her testimony as, you know, passing Dobert, et cetera. I mean, I just don't. And we presume judges know what they're doing. Well, that presumption only gets us so far, Your Honor, and that's actually not the approach this court takes in federal sentencing. We have Rule 32. We have the quarrel standard. That's a totality of the record. I mean, okay, assume we can kind of have a little more faith that judges know the law. Those presumption cases don't deal with unreliable evidence at sentencing. This is a different body of law. But when you say totality of the circumstance, again, I don't see any evidence that the judge considered this as an expert testimony in the victim impact statement. Bringing it back to that, Your Honor, I think here's the indication. Before the mother spoke, the court was searching for an answer. The court said, look at Defendant Martinez. He got 55 years. What about that? He said to the government, is there any difference between Mr. Martinez and Mr. Harrell in terms of how dangerous they are? And the government said, no, there is not. It's simply that Mr. Martinez cooperated, and we don't find that Mr. Harrell's assistance was sufficient. That's the only difference. So the court had that. The court said, well, I accept that he does seem to have autism. And there are studies that show it decreases with age, that recidivities, desires decrease. And then the court said, you know, I've had people in the 60s and 70s, but not really the 80s. I've seen people. So the court was grappling with this. The court was struggling with it. And after the victim testimony, he said, I just don't know. He said, I don't have enough of an answer. Well, but that's not what he was required to do, Your Honor. The question is, he needed to impose a sentence no more restrictive than necessary to accomplish deterrence. That was his task. Rule 32 required some indication. We require a little more assurance from judges that they've resolved these core factual disputes. This was the core factual dispute in a life case. Well, but he says, I can't resolve it, and I'm very sympathetic with him. And I think if he did all the scientific study he wanted for three months, he would still say, I can't resolve it. Well, Your Honor, if the court can't resolve it, then I think the court needs to say, I'm not going to rely on it. If this is a factual dispute that is simply not able to be resolved, then he should have said, I'm not going to rely on this then. Because this was the dispute. It was very clear he did not rely on her testimony. Is that clear, Your Honor? I don't think that it is. Because he said, when he rendered his sentence after she spoke, he said, you know, I'm not a psychologist or a neuropsychologist. Well, who was a neuropsychologist or a psychologist? The defendant's expert. And then the mother got up in the stand and explicitly said, I am. I am qualified. I have done my dissertation was on the question of recidivism. And she had been able to hear the court express its concerns and identify what it was thinking about and then responded directly to that very same question. You know, not is he going to recidivate now, but is he going to recidivate later under supervised release conditions, possible civil commitment? If we sent it back, the judge would say, I'm not relying. I didn't rely on that. I won't rely on it. I'm coming to the same conclusion anyway. The judge could certainly do that. The judge could certainly do that. And then we would have some more assurance that Mr. Hurrell's due process rights had been honored. But that was not what the judge did. The judge did not say, I'm relying on the severity of the crime or the need to have the severity reflect the gravity of the crime. Instead, I am looking at recidivism. And yet I'm not resolving that question. That's not actually appropriate. Kerr and McGowan, when the judge kind of speaks out of both sides of its mouth, what we do is we send it back. In Kerr, the court said, you know, I would have given the same sentence anyway. But it did actually find the unreliable testimony reliable. So what this court said is, you know, we just really don't know. It said it wasn't relying on it. But then it actually found it reliable. We're going to send it back. McKittrick also. The court had a pre-sentence report that didn't really indicate, you know, what basis the court relied on to deny an acceptance of responsibility. The answer was to send it back, and I think that's what this court should do here, especially in a case of this gravity. And then if Your Honors, I see my time is growing short. So if Your Honors don't mind,  Thank you. Good morning, Your Honors. May it please the court, Devin Myers on behalf of the United States. Defendant's appeal is subject to plain error review because he did not make any objection before the district court. Defendant has made no showing of clear or obvious error or any error that affected the outcome of the sentencing. This court should affirm the defendant's sentence. The bulk of the evidence here, Your Honors, weighs in favor of a life sentence. The 20 victims, 3 of whom were babies, 6 of whom were toddlers, 10 of whom were kindergarten age, and one 9-year-old victim, plus the 155 posts on website A, the guidelines at offense level 53 which were undercounted that recommended life, the probation officer's recommendation of life, the government's recommendation of life. There, all of the evidence weighed in favor of a life sentence, and the court justly imposed a life sentence. There is no evidence that the district court relied on the mother's statements. He expressed sympathy to her after she spoke, and that's at ER 46. He said, Thank you, ma'am. I am sorry that you are going through this horrific experience, and I wish you nothing but just peace and healing as you go forward. He didn't ask her any other statements about her claims. He made no other comments about it. The court said before the mother spoke, after the parties discussed recidivism, and after defense counsel spoke up and asked to be heard on the issue of recidivism, the district court said at ER 27, at a minimum, the point is that we just don't know one way or the other. There are studies that say it is less likely, but there are also instances where it happens. And after the mother spoke, the judge said the same thing. He said, I just don't have enough of an answer, and that's at ER 59. Her statements did not change his assessment at all. Before she spoke, he said, I don't know, and after she spoke, he said, I don't know. If she had spoken and changed his mind, he would have said, Now I have an answer to that question. That's not what the district court said. Importantly, the district court did tell us what he relied on, and this is at ER 58. He spoke about the extreme severity of the conduct. Quote, it was repeated, it was manipulative, it has broken families, it has broken trust, so it's extremely serious. He spoke about the need to avoid sentencing disparities, and that's why we discussed co-defendant Martinez's sentence previously. There, that similarly situated defendant's guidelines were also at level 53. There, the government recommended a 55-year sentence, which the court imposed because that defendant cooperated with the government. Notably, co-defendant Brinson, who was sentenced after this defendant, also received a life sentence. He was similarly situated. The district court said, this is a challenging case, and for me it comes down to sort of ascertaining, sort of protecting the public from further crimes of Mr. Harrell. And I just don't have enough of an answer. I'm not a psychologist or a neuropsychologist to ascertain whether there's some period of time by which the urges, the desires, etc., to commit the crimes like this will go away. Then he says, I am cognizant of Mr. Harrell's, at least the documentation that has been submitted on his behalf, and I have considered that. So I will now state the sentence, but I want to give counsel a final chance to make legal objections before the sentence is imposed, and that's at ER 59. And the defense counsel had no objections. In terms of what the court should look at and the cases in the standard to analyze whether there has been a substantial effect on the defendant's sentence, I think that Christensen and Vander Workhorst are most on point. The substantive fact, both of those cases were plain error cases, and for Vander Workhorst, substantively it is similar in the sense that that defendant had previously attempted to kidnap and abuse a child and was accused of kidnapping the child or attempted kidnapping after he tried to remove him and then beat him badly. He then destroyed or attempted to destroy most of his child pornography collection, and then at the time that he was being charged federally was accused of abusing a 3-year-old child. Those facts were before the court at the time of sentencing. There, the Ninth Circuit noted that, quote, at the outset we acknowledge the district court may consider a wide variety of information at the sentencing that could not otherwise be considered a trial, and the pin site for that is at 935. The court imposed, quote, the court imposed a sentence that it deemed reasonable, and there the sentencing judge had varied upwards for the guidelines and so the Ninth Circuit said that the court imposed a sentence that it deemed reasonable based on the undisputed conclusion that Vander Workhorst posed a danger to society and in particular a grave risk to children, not due to any one specific piece of- Well, I mean, the weird thing is, and this isn't exactly what the challenge is, but the district judge didn't really find that. He just said, I don't know, in terms of out in the future, far in the future. His ultimate conclusion was he didn't know. Yes, Your Honor. He didn't know about whether the defendant would recidivate. Even though he said that was the key question. So essentially he's saying, so we're going to err on the side of safety given how horrible this is. That's essentially what he's saying. Yes, given the weight of the evidence, the 20 victims, the probation officer's recommendation, the guidelines, and the government's recommendation. Yes, Your Honor. And the only problem is that the- I mean, I gather it's indisputable that the victim evidence was- I mean, insofar as she was talking, purporting to give information about the question that the judge said both before and after he didn't know the answer to, was not appropriate because she wasn't a certified expert and he was not entitled to rely on that. He doesn't say he did rely on it. He doesn't say he didn't rely on it. And he does say, you know, this is what I'm most troubled about. And then he decides to- and I don't know the answer and I'm not a psychologist. Well, she was a psychologist or something like a psychologist. And then he says, and I don't know what to do. So I'm going to err on the side of safety is what he says. So the question is, can we know that he wasn't influenced or taking into account the last thing he heard on the question that he said was the key question? I think the record shows that he did not rely on her statement. In terms of the statement itself, I don't think anybody is holding her out as an expert. That's what she decided to say in that moment. She was holding herself out as an expert. Sure. But nobody else has made a finding that she's an expert. And in all of the cases that are cited, even in- A pretty convincing expert, actually. Pardon? She was a pretty convincing- I mean, it was just very unusual and disturbing that she was both the victim and that she actually did have a substantial background in this area. Yes, Your Honor. Very close in, actually. And I would submit under the CVRA that the victim- The purpose of the CVRA is to ensure that the district court doesn't discount the impact of the crime on the victims, to force the defendant to confront the human cost of the crime, and to allow the victim to regain a sense of dignity and respect rather than feeling powerless and ashamed. And that's in Kenna. And I think that's what the district court allowed the mother to do. But in all of the cases, if you look at Vandervoort, of course, and Christensen, which I would submit that are controlling, and I think Christensen is most closely on point, but even if you look at McGowan and Corral, in each of those instances there was something in the record that took that piece of evidence that was contested. Now, notably in McGowan and Corral, there was a defense objection at the sentencing hearing, so they were not in plain error review. But there was something in the record that showed the district court made a change based on those statements. So in Christensen, importantly, that's where the victims in their victim impact statements submitted a loss amount that was different than what was in the PSR. They also spoke about the life-destroying impacts of the defendant's crime. And so, objectively, some of the facts about the loss evidence that they included wasn't accurate, right? But there the district court used the loss amount that was in the PSR, but then decided to vary upwards, right? So again, he's making a change from where the guidelines were, and when he decides to vary upwards, he cites the life-destroying impacts of the crime that the victims spoke about. And in Christensen, the Ninth Circuit held that there was no error, that it was highly uncertain whether the defendant would have received a lesser sentence if the district court had not considered the impacts, and there was no evidence of materially false information was the basis for the sentence. And that is the same case here, and I would submit that no one has made a showing that what the mother said was incorrect in and of itself, but more importantly, it just didn't affect the sentence. And in all of the cases that the parties are citing, there was some change, there was some difference that happened, and some commentary about what the statements were, and that is not the case here. There is a presumption that the district court, as you noted when defense counsel was speaking, under Beatty and Gretzler, that the district court knows what it is doing, and that it can determine and make a sentence based on what it should appropriately consider. I see that my time is up. I will submit unless you have any more questions. Thank you. Thank you, Your Honors. I just wanted to respond to a few points. One, the government cited Beatty and Gretzler for the idea that there is a presumption that the district court knows the law. Those are very factually far afield from this case. Those are capital habeas cases arising from state court that involve sort of black and white legal rules that the district court is presumed to know. Does the district court know the law? Does it know that Booth didn't allow victim impact statements and that Payne then allows some sort? But that's not the kind of inquiry we have here where the question is whether certain evidence was considered. But it's pretty basic. Every district court judge knows before you admit expert testimony to consider it, you have to consider the qualifications, it's reliable, et cetera. There is none of that here, which suggests that the judge didn't take that into account. Your Honor, that's the case at the guilt and innocence phase or the conviction phase. You have to follow Rule 702. But at the sentencing phase, the question is reliability. So, no, I don't think it's kind of as clear-cut of a legal rule. It's sort of the whole record under Corral and McGowan. And that's not the kind of question that district courts are presumed to know. There's no way a judge would think she, even if the judge assumed this person was a reliable expert witness, this person would not be biased given that her children were the ones who were sexually assaulted. Let's look at what the district court said before. I'd like to just enumerate a few things that it talked about. Before she spoke, Martinez received 55 years. He had no difference in his recidivism. That was what the government said. He said, Mr. Corral does have the records to indicate he has autism at ER 29. And the defense paperwork studies said that that is a factor that decreases recidivism. The district court said at ER 27 he will have more eyes watching. It was about access. But he had access to a daycare. He had access to many, many young children who were his relatives. He had access to a school trip. None of that, none of that would apply in 55 years. This is something the district court was thinking before she spoke. There were studies that say it's less likely. The district court recognized that at ER 27. So I do think we have quite a number of indications that the district court, before the mother spoke, was considering a very long, very long, very severe, but less-than-life sentence, and that after she spoke... Why do you think less-than-life? 55 years? Well... Because he mentioned 55 years. Well, he mentioned 55 years for a co-defendant, Martinez. That's correct. And he said, what about that? He asked the government about that. And he said, is it because of the nature of the crime that's different? And the government said, actually, it's not. They're all evil. They're the same. The only difference, the government said, was that Martinez had cooperated and Harrell had not to their satisfaction. Well, he may in fact have been influenced by the victim's statements because they were very moving, but not necessarily by that part of it. Well, I think that... I mean, I think that's sort of a separate argument in my brief here.  and impassioned nature of the victim's statements is kind of another factor that actually does weigh into this corralled totality of the circumstances question. Even if in a normal circumstance, maybe a judge could have said, okay, you know, I know that a victim can't testify as an expert. This was sort of a snowball effect. By the end of the hearing, we started out with he's evil, he's a psychopath, he's a sicko and a predator. Then we have the victim giving very impassioned testimony, not only as a mother who'd been harmed, but as a person who had almost her doctorate in this precise question. And then at the end of the hearing, the last thing the district court heard before rendering a sentence was a father coming on the stand and saying, and I will kill him. I will find him and I will kill him if he ever, ever gets out of prison. So any 55-year sentence, he will be murdered. I mean, that was an actual threat, and it was presented in such a way as to be very intentional. He said, I will stand on my words and I say this again and again and I will do it. And this was the last thing the district court heard before sentencing Mr. Harrell to life in prison without parole. I don't think we can really separate out all of the extremely impactful aspects of these victim statements, and I think in the context of all that, I don't think that we can presume that the district court was simply dispassionately putting on its law hat and saying, well, I'm not going to consider this. In fact, it said, it comes down to the question of can he be deterred? And I don't have enough of an answer. That's not enough. That's not enough, Your Honors. We need the district court to take a position on that and indicate why it sentenced him to life in prison without parole. Thank you both for the helpful argument. The case has been submitted.
judges: FLETCHER, BERZON, LEE